**Michael Gerord WASHINGTON,**
**Appellant,**

v.

**STATE of Texas, Appellee.**

**No. C14–83–102CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 20, 1983.

Ronald Mock, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

OPINION

ELLIS, Justice.

This appeal is from a judgment of conviction for the offense of murder. At trial, the jury found appellant, Michael Genord Washington, guilty and assessed punishment at ninety-nine (99) years in the Texas Department of Corrections and a fine of ten thousand dollars ($10,000). In his sole ground of error, appellant claims that the grand jury failed to exercise reasonable diligence in ascertaining the manner and means of death. We overrule this ground

of error and affirm the judgment of the trial court.

Appellant was tried on the second paragraph of the indictment, which alleges that he caused the death of Csion Thompson, a seven year old girl, by intending to cause serious bodily injury to her and knowingly and intentionally committing an act clearly dangerous to human life, namely, causing a blunt trauma to the head of Csion Thompson, by manner and means to the grand jury unknown.

The evidence at trial showed that on June 28, 1982, Csion Thompson lived with her mother, Barbara Harris, and appellant, Michael Washington, her mother's live-in companion. Ms. Harris testified that Csion was in perfect health that morning and had no bruises or abrasions about her body. Teachers at school that day did not observe Csion in an altercation with anyone. The babysitter who kept Csion after school observed that when appellant brought the child to her home, she had no bruises or marks and was in good health.

Generally, Ms. Harris and appellant would pick up Csion together at about 6:00 p.m. On June 28, 1982, however, appellant alone picked up Csion from the babysitter at about 3:00 p.m. When Csion and appellant picked up Ms. Harris at 6:00 p.m., Ms. Harris noticed a nickel-sized bruise on Csion's right temple. She asked Csion what had happened, but before Csion could respond, appellant told Ms. Harris that Csion had been in a fight with some boys at school.

After dinner that night, Ms. Harris was downstairs in her town home when she heard appellant upstairs telling Csion to bend over and touch her toes. Next, she heard a sound she described as a lashing, like a belt hitting a body. In a mirror located at the top of the stairs, Ms. Harris could see from the staircase appellant hitting Csion on the legs and buttocks with a board. The board splintered and appellant continued hitting Csion with the portion that remained in his hands. Ms. Harris tried to stop appellant from hitting the child, but appellant attacked her and then

began simultaneously choking and shaking Csion. Csion died at the hospital a short time later of a subdural hematoma (blot clot to the brain).

In short, Ms. Harris had seen appellant beat Csion elsewhere than on the head with a board and simultaneously choke and shake her. She also suffered injuries to the head not witnessed by Ms. Harris.

Expert testimony showed that the cause of death was a subdural hemorrage, blunt trauma to the head. Additionally, the simultaneous shaking and choking could have caused the blood to flow faster in the subdural hemorrage. The expert could not specify a particular blow, but said that the sum total of the trauma caused the death.

The foreman of the grand jury said that when it returned the indictment the manner and means of death was unknown to the grand jury. The grand jury inquired as to the manner and means of death, but there was no evidence at that time that would show manner and means.

In his sole ground of error, appellant claims that the grand jury failed to exercise reasonable diligence in ascertaining the manner and means of death. Apparently, appellant claims that the Csion's death was caused by appellant striking her with a board. Appellant appears to assume that the assistant district attorney did not tell the grand jury about the board, although he does not show that to be the case.

■■■ The indictment should allege the manner and means used to commit the offense charged. Alternatively, a statement that the accused killed the deceased in some manner and by some means unknown to the grand jury is sufficient. The grand jury, however, must use reasonable diligence to ascertain the nature of the instrument which causes death. *Jackson v. State*, 516 S.W.2d 167 (Tex.Cr.App.1974).

In *Jackson*, the foreman of the grand jury testified that the nature of the instrument was unknown and that a proper effort through detectives had been made to determine its description. The Court of Criminal

Appeals found that the grand jury used reasonable diligence.

In the present case, the grand jury inquired as to the manner and means of death. Under the rule of *Jackson,* this inquiry would probably be sufficient. Furthermore, in our case, expert testimony showed and the jury found that the manner and means which caused the fatal blood clot could not be determined. Ms. Harris saw appellant strike the child with the board, but not on the head, and the expert could not specify which blow caused the child's death. The board may or may not have caused death. The manner and means of death were unknown after the jury heard the evidence at trial as well as when the grand jury returned the indictment. The grand jury, therefore, used reasonable diligence to ascertain the manner and means of death.

Accordingly, we affirm the judgment of the trial court.